Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| CONTINENTAL LORD, INC.<br><br>Apelante<br><br><br>V.<br><br><br>MUNICIPIO AUTÓNOMO DE VEGA ALTA<br><br>Apelado | TA2025AP00668 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV00723<br><br>Sobre: Sentencia Declaratoria; Arbitrios de Construcción |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

El 12 de diciembre de 2025, compareció ante este Tribunal de Apelaciones, Continental Lord, Inc. (en adelante, el Continental o parte apelante), mediante recurso de *Apelación.* Por medio de este, nos solicita que revisemos la *Sentencia* emitida el 14 de noviembre de 2025 y notificada el 17 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del aludido dictamen, el foro *a quo* declaró Con Lugar la *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria a Favor del Municipio de Vega Alta* presentada por el Municipio Autónomo de Vega Alta (en adelante, Municipio o parte apelada). En consecuencia, declaró que procede el arancel de construcción impuesto por el Municipio a la parte apelante y declaró Sin Lugar la *Demanda.*

Por los fundamentos que adelante se exponen, se *confirma* la *Sentencia* apelada.

**I**

Los hechos que suscitaron la controversia de epígrafe tienen su lugar en una *Demanda* sobre sentencia declaratoria y arbitrios de construcción, presentada por Continental en contra del Municipio. La parte apelante sostuvo que, había sido contratada[1] por la Autoridad de Energía Eléctrica (en adelante, AEE), para proveer el reemplazo de postes y alumbrado público existente. Señaló que, el trabajo a realizarse no incluía erigir estructuras nuevas ni reparar estructuras existentes. Adujo que, el 7 de enero de 2025, el Municipio le notificó una factura en la cual se le impone arbitrios de construcción y el cobro de estos, en cuanto a los trabajos que Continental debía realizar en la propiedad perteneciente a la AEE. Mediante dicha factura, el Municipio determinó que las obras a realizarse estaban sujetas al pago de arbitrios, al amparo del Art. 2.110 (b)(2) de la Ley Núm. 107 de 14 de agosto de 2020, conocida como Código Municipal de Puerto Rico. El Municipio, también determinó que, para fines de la imposición del arbitrio de construcción, el valor de la obra era de $1,571,961.70, y estimó el arbitrio de construcción en $78,598.09.

Se desprende de la *Demanda* que, en igual fecha, Continental remitió una comunicación dirigida al Municipio en la cual expresó que, los trabajos a ser realizados no estaban sujetos al pago de arbitrios de construcción. Lo anterior, debido a que la AEE está expresamente exenta del pago de arbitrios de construcción, según dispuesto en la sección 22(a) de la Ley Núm. 83 de 2 de mayo de 1941. Sostuvo, además, que las obras y el lugar donde se realizaban los trabajos pertenecen a la AEE y se encontraban en territorio del Municipio. Por otro lado, acotó que, el Municipio insistió en imponer y recibir el pago del arbitrio de construcción, previo a emitir su

---

[1] Mediante el contrato número 2024-L00627 otorgado el 27 de junio de 2024, con vigencia hasta el 26 de junio de 2026.

endoso y/o aprobación de obras. Dado a lo anterior, la parte apelante emitió el pago de $78,598.09 bajo protesta. Continental relató que, el 24 de enero de 2025, presentó ante el Municipio un escrito de reconsideración de la determinación del Municipio. Explicó que, en su reconsideración planteó lo siguiente:

> (a) el Municipio no tiene autoridad en ley para imponer el arbitrio de construcción porque el arbitrio se impone sobre la obra de construcción y no al contratista que realiza la obra para la agencia; (b) el contratista no es el dueño de la obra (c) que el contratista no es el contribuyente ante el tributo que se le impone bajo el Código Municipal, (d) la exención contributiva de la Sección 22(a) de la Ley 83 de 1941, Ley Orgánica de la AEE, le es extensiva y cobija a Continental, (e) Continental no tiene obligación jurídica de pagar el referido arbitrio, pues ello sería permitir de forma indirecta el cobro del arbitrio a la AEE, lo cual está vedado hacer directamente a la AEE, entre otros planteamientos.

De igual forma, solicitó el reembolso de los $78,598.09 del arbitrio de construcción pagado bajo protesta. En su *Demanda* la parte apelante explicó que el arbitrio de construcción es un cargo que se impone sobre la obra, por lo que, el pago le corresponde al dueño de la obra. Añadió que, la imposición del pago del arbitrio sobre la AEE, para que la parte apelante lo pague, tendría el efecto de que esta última le facture el mismo a la AEE, con lo cual, a su juicio, se tornaría inefectiva la exención contributiva. Mencionó que, lo anterior se encontraba en armonía con lo resuelto por el Tribunal Supremo en el caso de *Coop. de Ahorros Rincón v. Mun. Mayagüez*, 200 DPR 546 (2018). De igual forma, expresó que, la Ley Habilitadora de la AEE, Ley Núm. 83 de 2 de mayo de 1941, *infra*, establecía que, la AEE está exenta del pago de los arbitrios de construcción desde el año 1941, por ser una corporación pública y sus operaciones ser para el bienestar, desarrollo y prosperidad del pueblo de Puerto Rico.

En la alternativa, argumentó que, los trabajos a realizarse no constituían la edificación de una estructura, sino reparación de

postes y alumbrado. Asimismo, le solicitó al foro apelado que dictara sentencia declaratoria donde estableciera que el Municipio carecía de jurisdicción para imponer arbitrios de construcción sobre Continental, ya que, esto se imponía sobre la obra de construcción y su dueño era la AEE. Razonó que, dicha imposición constituía una imposición contributiva a la AEE, que está exenta del pago de arbitrios de construcción.

La parte apelante suplicó al Tribunal de Primera Instancia que emitiera sentencia declaratoria donde le eximiera del pago de arbitrios de construcción. En la alternativa, peticionó que determinara que los trabajos contratados por la AEE a Continental no eran obras de construcción y que se le impusiera al Municipio el pago de intereses sobre la suma pagada bajo protesta, más honorarios por temeridad.

En respuesta, el Municipio presentó la *Contestación a la Demanda.* En primer lugar, negó las alegaciones de la *Demanda.* Arguyó que, el Municipio estaba facultado en ley para imponer y cobrarle al contratista de la AEE ciertos árbitros de construcción. Argumentó que, dicha facultad está condicionada a ser conferida mediante mandato y delegación expresa y clara del Poder Legislativo, conforme a la Constitución de Puerto Rico. Asimismo, afirmó que, la facultad otorgada al Municipio para imponer contribuciones, derechos, licencias y otros cargos proviene del Art. 2.109 de la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, conocida como el Código Municipal de Puerto Rico, *infra.* El Municipio explicó que, el aludido estatuto atiende y regula el proceso de cobro y revisión de arbitrios de construcción, la cual es una de las contribuciones que los municipios pueden reclamar, y cuyo pago es exigido por estos, previo al comienzo de la obra. Hizo alusión al caso *ECA General Contractors, Inc. v. Municipio Autónomo de Mayagüez,* 200 DPR 665 (2018), el cual establece la obligación

de pagar el arbitrio de construcción cuando se da la concurrencia de varias circunstancias, a saber: "(1) que se trate de una obra de construcción; (2) que esté dentro de los límites territoriales del municipio; y (3) que la realice una persona natural o jurídica privada, o una persona natural o jurídica privada contratada por una agencia o dependencia del Gobierno Central, municipal o federal". Asimismo, planteó que, en el Código Municipal, la Asamblea Legislativa expresamente reconoció la exención contributiva de las corporaciones públicas, como la AEE, pero expresamente dispuso que tal exención no era aplicable a sus contratistas. Por último, solicitó la desestimación de la *Demanda*.

Mediante *Orden* emitida el 27 de mayo de 2025, el Tribunal de Primera Instancia determinó que, dado a que la controversia de epígrafe era una de estricto derecho, se hacía innecesaria la celebración de vista, por lo que, le ordenó a la parte apelante a presentar moción dispositiva dentro de 20 días.

Transcurridas varias incidencias procesales, innecesarias pormenorizar, el 18 de agosto de 2025, la parte apelante presentó *Solicitud de Sentencia Sumaria*. En su petitorio, propuso 18 hechos esenciales y pertinentes que, a su juicio, no se encontraban en controversia. La parte apelante, además, reiteró los argumentos esbozados en la *Demanda*. Puntualizó que, ostentaba suficientes causas de acción contra del Municipio, ya que este no contaba con autoridad en ley para imponerle arbitrios de construcción a Continental y que dicha acción resultaría ilegal. Aseguró que, las acciones del Municipio menoscababan la exención contributiva contenida en la Sección 22(a) de la Ley Núm. 83 de 1941, *infra*, la cual era extensiva a su contratista. Mencionó, además que, la obra contratada no era una de reparar o remover un edificación, estructura, casa o construcción de similar naturaleza según

establece el Art. 8.001(4) del Código Municipal. Por último, le solicitó al foro apelado que:

    (a) Declare Ha Lugar la presente Solicitud de Sentencia Sumaria declarando que la exención contributiva de la AEE es extensiva a la Demandante y ordene que el Municipio le devuelva a la Demandante la cantidad de $78,598.09 que le pagó al Municipio bajo protesta;

    (b) En la alternativa, declare que la actividad que realiza la Demandante bajo el contrato con la AEE no constituye una construcción;

    (c) Imponga honorarios al Municipio por temeridad; y

    (d) Emita cualquier otro pronunciamiento que proceda en derecho.

Así las cosas, el 20 de octubre de 2025, la parte apelada presentó *Oposición a "Moción de Sentencia Sumaria" y Solicitud de Sentencia Sumaria a Favor del Municipio de Vega Alta*. Hizo referencia a varios de los hechos que la parte apelante había esbozado como no controvertidos, y argumentó que, los mismos no cumplían con los requerimientos de la Regla 36.3(d) de Procedimiento Civil. De igual forma, dio por admitidos otros hechos. Por otro lado, propuso cinco hechos que identificó como no controvertidos. La parte apelada expresó que, debido a que la parte apelante incumplió con las disposiciones de la Regla 36 de Procedimiento Civil, procedía denegar la moción de sentencia sumaria. El Municipio reiteró su postura respecto a que, el caso de *Coop. de Ahorros Rincón v. Mun. Mayagüez* no era aplicable a la controversia de epígrafe. En cuanto a los casos del Tribunal de Apelaciones, citados por la parte apelante, señaló que, estos no sentaban precedente y que, eran distinguibles de los hechos del caso de marras.

El 20 de octubre de 2025, el foro primario emitió *Orden* en la que dispuso que no se permitían réplicas ni dúplicas.

Finamente, el 14 de noviembre de 2025, el Tribunal de Primera Instancia emitió *Sentencia* en la cual concluyó:

Examinado el expediente en su totalidad, así como las alegaciones de las partes y la prueba presentada, y haciéndolas formar parte de la presente "Sentencia" este tribunal DECLARA CON LUGAR tanto la solicitud de "Oposición a "Moción de sentencia sumaria" como la solicitud de sentencia sumaria a favor del Municipio de Vega Alta", presentada por la parte demandada, el Municipio de Vega Alta. En consecuencia, declaramos que procede el arancel de construcción impuesto por este Municipio a la parte demandante, Continental Lord Inc. y se declara Sin Lugar la Demanda.

En desacuerdo, el 1 de diciembre de 2025, la parte apelante presentó *Solicitud de Reconsideración*. Mediante *Resolución* emitida el 2 de diciembre de 2025, la primera instancia judicial declaró No Ha Lugar la aludida moción de reconsideración.

Aún inconforme, la parte apelante presentó el recurso cuya revisión nos atiene y esgrimió los siguientes señalamientos de error:

**PRIMER ERROR**: Cometió grave error y abuso de discreción el Tribunal de Primera Instancia al negarle a la parte Apelante la presentación de una Oposición y/o Réplica a la Solicitud de Sentencia Sumaria presentada por el Municipio de Vega Alta, violando así el derecho de ésta al debido proceso de ley en su vertiente procesal y en contravención a dicho derecho consagrado en la Regla 36.3 de las de Procedimiento Civil.

**SEGUNDO ERROR**: Cometió grave error y abuso de discreción el Tribunal de Primera Instancia al al (sic) resolver que la exención estatuida en la Sección 22(a) de la ley orgánica de la AEE (Ley 83-1941) no se extendía al contratista de una obra de la AEE efectuada por éste a favor de la AEE. Ello no obstante lo dispuesto en <u>Coop. de Ahorro y Crédito de Rincón v. Municipio de Mayagüez</u>, 200 DPR 546 (2018), y (sic) <u>Interior Developers v. Mun. de San Juan</u>, 177 DRP 693 (2009), sobre las cuales el tribunal concluyó que no eran aplicables.

**TERCER ERROR**: Cometió grave error y abuso de discreción el Tribunal de Primera Instancia al no darle el justo y debido peso que se merecen los casos resueltos por el Tribunal de Apelaciones haciendo extensiva la exención contributiva de una entidad exenta al contratista que realiza una obra perteneciente a dicha entidad, en virtud de la intención legislativa de la ley orgánica de la AEE y la jurisprudencia demostrando prejuicio, parcialidad, arbitrariedad, y error craso y manifiesto de derecho.

**CUARTO ERROR**: Cometió grave error y abuso de discreción el Tribunal de Primera Instancia al concluir que varios casos resueltos por el Tribunal de Apelaciones sobre la misma materia eran aplicables,

cuando los hechos en los citados casos son diferentes y no son aplicable[s] a la controversia, demostrando prejuicio, parcialidad, arbitrariedad, y error craso y manifiesto de derecho.

**QUINTO ERROR**: Cometió grave error y abuso de discreción el Tribunal de Primera Instancia al concluir que el Código Municipal prevalece sobre la Sección 22(a) de la ley orgánica de la AEE (Ley 83 de 1941). Ello en virtud de lo resuelto en *Caribbean Petroleum Co. v. Departamento de Hacienda*, 134 DPR 861 (1993) y siendo la Ley 83-1941 una ley especial que establece en la sección 27 que la misma prevalecerá sobre las disposiciones de cualquier otra ley posterior con la que estén en pugna.

**SEXTO ERROR**: Cometió grave error y abuso de discreción el Tribunal de Primera Instancia al determinar que la enmienda del Código Municipal que introdujo la Ley Número 215 del 17 de septiembre de 2024 (Ley 215-2024) tiene aplicación retroactiva, cuando los precedentes judiciales establecidos por el Tribunal Supremo y del propio texto de la ley se dispone que la misma aplica prospectivamente, demostrando así prejuicio, parcialidad, arbitrariedad, y error claro y manifiesto de derecho.

El 12 de enero de 2026, la parte apelada presentó ante este foro revisor, *Alegato de la Parte Apelada, Municipio Autónomo de Vega Alta.*

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

**II**

*A. Sentencia Sumaria*

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[2] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Birriel Colón v. Econo y Otros*, 213 DPR 80, 90 (2023); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622, 627 (2022); *Banco Popular de Puerto Rico v. Cable Media of Puerto*

---

[2] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022).

*Rico, Inc. y otro*, 2025 TSPR 1 (2025). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.,* supra, pág. 992. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[3] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022); *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, supra. Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra, pág. 91.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo

---

[3] *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).

que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte

contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan

estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd.* *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

## B. Código Municipal de Puerto Rico & Arbitrios de Construcción

La Constitución de Puerto Rico establece que, "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI, Sec. 2, CONST. ELA, LPRA, Tomo 1. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 398 (2022); *Interior Developers v. Mun. de San Juan*, 177 DPR 693 (2009). Debido

a que la Rama Legislativa es la entidad con el poder impositivo del Estado, esta se encuentra facultada para delegarle a los municipios el poder para imponer contribuciones. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra, pág. 398.

Bajo dicha facultad, fue creada la derogada Ley de Municipios Autónomos, Ley Núm. 81-1991 (21 LPRA sec. 4001 *et seq.)*, con el propósito de garantizar a los municipios un mayor grado de autonomía fiscal y gobierno propio para atender eficazmente las necesidades y el bienestar de sus habitantes. *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 286 (2011). Conforme a esa política pública, el derogado estatuto regulaba las facultades de los municipios para lograr el mejor aprovechamiento y fiscalización de las obras que se realicen dentro de sus límites territoriales. *Const. José Carro v. Mun. Dorado*, 186 DPR 113,121 (2012). Cónsono con lo anterior, el Art. 2.002 de la derogada Ley de Municipios Autónomos, disponía que, los municipios podían, entre otras facultades, imponer contribuciones o arbitrios sobre las obras de construcción que se realizaran dentro de los límites territoriales del Municipio. *Íd.* pág. 122. El aludido artículo en su inciso (d) disponía lo siguiente:

> Además de las que se dispongan en otras leyes, el municipio podrá imponer y cobrar contribuciones o tributos por los conceptos y en la forma que a continuación se establece:
>
> (d) Imponer y cobrar contribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables dentro de los límites territoriales del municipio, compatibles con el Código de Rentas Internas y las leyes del Estado Libre Asociado de Puerto Rico, incluyendo sin que se entienda como una limitación, por el estacionamiento en vías públicas municipales, por la apertura de establecimientos comerciales, industriales y de servicios, por la construcción de obras y el derribo de edificios, por la ocupación, el uso y la intervención de vías públicas y servidumbres municipales y por el manejo de desperdicios.
>
> Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona

natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal o del Gobierno Federal, incluyendo aquella obra que no requiera la solicitud o expedición de un permiso por la Oficina de Gerencia de Permisos o por un municipio autónomo, deberá pagar arbitrio de construcción correspondiente, previo al comienzo de dicha obra.

En estos casos, se pagarán dichos arbitrios al municipio donde se lleve a cabo dicha obra, previo a la fecha de su comienzo. En aquellos casos donde surja una orden de cambio en la cual se autorice alguna variación al proyecto inicial, se verificará si dicho cambio constituye una ampliación y de así serlo se computará el arbitrio que corresponda. En aquellas instancias en las que el cambio de orden que autorice una variación al proyecto inicial tenga el efecto de reducir el costo final del mismo, la persona que pagó arbitrios al municipio podrá solicitar un reembolso por la cantidad pagada en exceso. La solicitud de reembolso tendrá que hacerse dentro de los seis (6) meses prescriptivos siguientes a la fecha en que se aprobó el cambio de orden en los casos de obras públicas o desde que concluya la obra en los casos en que la obra sea privada.
[…][4]

El término *arbitrio de construcción* era definido por la derogada Ley de Municipios Autónomos como "aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras (2/3) partes [de la legislatura municipal] para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción o una obra de construcción dentro de los límites territoriales del municipio". En ese sentido, no existe otra obligación impuesta al municipio para la implementación de un arbitrio de construcción que no sea su aprobación por dos terceras partes de la legislatura municipal. *Const. José Carro v. Mun. Dorado,* supra, a la pág. 123.

Por otra parte, el Art. 2.007 (f) disponía sobre las exenciones, a saber:

Quedan exentas del pago de arbitrio de construcción aquellas obras hechas mediante el método conocido como administración, es decir, como parte de

---

[4] Art. 2.002(d) de la derogada Ley de Municipios Autónomos.

los programas de construcción de una agencia del Gobierno Central o sus instrumentalidades, una corporación pública, un municipio o una agencia del Gobierno Federal. No obstante, esta exención no aplica a las obras de construcción llevadas a cabo por una persona natural o jurídica privada, actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal. Tampoco aplica dicha exención cuando se trate de obras de construcción llevadas a cabo por una persona natural o jurídica privada actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia del Gobierno Federal, cuando las leyes o reglamentos federales aplicables así lo permitan.

Más adelante, la Ley Núm. 81-1991, *supra*, fue derogada mediante la aprobación de la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, conocida como Código Municipal de Puerto Rico. La aprobación del Código Municipal responde a la política pública de proveer a los municipios, los poderes y facultades necesarias para que puedan asumir su función fundamental a favor del desarrollo social y económico de sus jurisdicciones.[5] Asimismo, como parte de la política pública reconocida por el Código Municipal, la Legislatura dispuso que, todas las ramas del Gobierno deben proteger las fuentes de recursos municipales y que, las facultades tributarias municipales deberán interpretarse liberalmente a favor del pueblo representado por el municipio.[6]

En lo pertinente, el Art. 2.110 del Código Municipal dispone sobre el pago de arbitrios de construcción. En particular, el inciso (f) de dicho artículo, dispone sobre las exenciones del pago de arbitrio de construcción, a saber:

Quedan exentas del pago de arbitrio de construcción aquellas obras hechas mediante el método conocido como administración, es decir, como parte de los programas de construcción de una agencia del Gobierno estatal o sus instrumentalidades, una corporación pública, un municipio o una agencia del Gobierno federal. No obstante, esta exención no aplica a las obras de construcción llevadas a cabo por una persona natural o jurídica, actuando a favor o en representación de o por contrato o subcontrato suscrito

---

[5] Art. 1.003 del Código Municipal.

[6] *Íd.*

con una agencia pública o corporación pública o instrumentalidad del Gobierno estatal o Municipal o Gobierno federal. Tampoco aplica dicha exención cuando se trate de obras de construcción llevadas a cabo por una persona natural o jurídica actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia del Gobierno federal, cuando las leyes o reglamentos federales aplicables así lo permitan.

Posteriormente, mediante la Ley Núm. 215 del 7 de septiembre de 2024, el precitado artículo fue enmendado como sigue:

Quedan exentas del pago de arbitrio de construcción aquellas obras hechas mediante el método conocido como administración, es decir, como parte de los programas de construcción que realice una agencia del Gobierno estatal o sus instrumentalidades, una corporación pública, un municipio o una agencia del Gobierno federal. No obstante, esta exención no aplica a las obras de construcción llevadas a cabo por una persona natural o jurídica, actuando a favor o en representación de, o por contrato o subcontrato suscrito con *una agencia pública o corporación pública o instrumentalidad del Gobierno estatal, municipal, o federal. Además, esta exención no será de aplicación a aquella actividad de construcción realizada por un contribuyente en favor de una persona natural o jurídica o entidad pública o privada, aun cuando esta última, como dueño de la obra, sea una entidad exenta, sin que esto constituya o se pueda interpretar como un menoscabo a la exención concedida al dueño de la obra.* Tampoco aplica dicha exención cuando se trate de obras de construcción llevadas a cabo por una persona natural o jurídica actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia del Gobierno federal, cuando las leyes o reglamentos federales aplicables así lo permitan. (*Énfasis nuestro.*).

En cuanto a las exenciones contributivas, nuestro Tribunal Supremo ha dispuesto que estas deberán interpretarse restrictivamente, y en caso de duda a favor de su inexistencia. No obstante, no se debe perder de perspectiva que, su interpretación no puede ser tan restrictiva que tenga el efecto de frustrar la intención legislativa. *Coop. de Ahorro de Rincón v. Mun. de Mayagüez*, 200 DPR 546, 560 (2018); *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 279 (2011).

### C. *Ley Núm. 83 de 2 de mayo de 1941*

La Ley Núm. 83 de 2 de mayo de 1941, según enmendada, también conocida como la *Ley de la Autoridad de Energía Eléctrica de Puerto Rico*, creó la AEE como un cuerpo corporativo y político que, constituye una corporación pública e instrumentalidad gubernamental autónoma del Gobierno de Puerto Rico. *A la Orden Shopping, S.E. v. Autoridad de Energía Eléctrica de Puerto Rico*, 213 DPR 546, 562 (2024), Secc. 3 de la Ley Núm. 83 de 1941.

En lo aquí pertinente, la Sección 22(a) de la Ley Núm. 83 de 1941, *supra*, dispone lo siguiente:

(a) Por la presente se dispone y se declara que los fines para los que la Autoridad se crea y debe ejercer sus poderes son: la conservación de los recursos naturales, el mejoramiento del bienestar general, y el fomento del comercio y la prosperidad, y son todos ellos propósitos de fines públicos para beneficio del Estado Libre Asociado de Puerto Rico en todos sentidos y, por tanto, la Autoridad no será requerida para pagar ningunas contribuciones estatales o municipales, o impuestos de cualquier tipo sobre ninguna de las propiedades muebles e inmuebles adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios. Las personas que celebren contratos con la Autoridad no estarán sujetas al impuesto gubernamental sobre contratos, establecido en la Ley 1-2011, según enmendada, conocida como el "Código de Rentas Internas de Puerto Rico de 2011".[7]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

### III

En el ejercicio de nuestra función revisora nos corresponde: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la

---

[7] 22 LPRA sec. 212.

referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[8].

De un ponderado análisis del expediente ante nuestra consideración, surge que, tanto la parte apelante como la parte apelada, en sus respectivas mociones de sentencia sumaria, cumplieron sustancialmente con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*. Puesto que, incluyeron las alegaciones de las partes, realizaron una enumeración de hechos sobre los cuales entendía eran incontrovertidos, de manera detallada, separada y sustentada. Asimismo, hicieron referencia a varios documentos que obran en el expediente. En cuanto a la oposición, la parte apelada cumplió de manera sustancial con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*, en la medida en que hizo referencia a la prueba documental que entendía que controvertían los hechos alegados por la parte contraria e indicó los párrafos y las páginas a las que hacía referencia.[9]

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos del Tribunal de Primera Instancia y las acogemos por no encontrarse en controversia.

---

[8] *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 679.
[9] Regla 36.3(b) de Procedimiento Civil, *supra*; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 15.

Superada esta primera etapa, nos corresponde evaluar si el foro de primera instancia actuó correctamente al dictar sentencia sumaria a favor de la parte apelada.

Como *primer* señalamiento de error, la parte apelante sostiene que, el foro de primera instancia incidió y abusó de su discreción al negarle la presentación de una oposición y/o réplica a la solicitud de sentencia sumaria presentada por el Municipio. Arguyó que, ello violó su derecho al debido proceso de ley en su vertiente procesal y que fue en contravención al derecho consagrado en la Regla 36.3 de Procedimiento Civil.

Según se desprende del expediente, la parte apelante presentó *Solicitud de Sentencia Sumaria*. Posteriormente, la parte apelada presentó *Oposición a "Moción de Sentencia Sumaria" y Solicitud de Sentencia Sumaria a Favor del Municipio de Vega Alta*. Más adelante, el foro de primera instancia emitió *Orden* en la que dispuso que no se permitirían réplicas ni dúplicas.

Por último, el foro *a quo* emitió la *Sentencia* cuya revisión nos atiene.

Es sabido que, la Regla 36 de Procedimiento Civil provee para que una parte presente una moción de sentencia sumaria cuando entienda que no hay una controversia sustancial y real sobre hechos materiales. Nuestro ordenamiento jurídico dispone que, procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho.[10] De la prueba que acompañe la solicitud de sentencia sumaria, deberá surgir

---

[10] *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13.

preponderadamente la inexistencia de controversia sobre los hechos medulares del caso.[11]

Nuestro Tribunal Supremo ha reseñado que, el inciso (e) de la Regla 36.3 establece lo siguiente:

> **La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente**.
>
> El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito.
>
> Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal.[12] (*Énfasis nuestro*).

En el caso de autos, el foro de primera instancia evaluó la solicitud de sentencia sumaria presentada por la parte apelante, así como la oposición y solicitud de sentencia sumaria presentada por la parte apelada junto a todos los documentos y prueba presentada por ambas partes. A base de su análisis, concluyó que, procedía que se dictara sentencia sumaria a favor de la parte apelada. Cabe señalar que, el foro de primera instancia tuvo ante sí una controversia exclusivamente de derecho, incluso, acogió los hechos propuestos por la parte apelante como hechos no controvertidos.

Al revisar el expediente en su totalidad, somos del criterio que, la decisión del foro primario estuvo sustentada en el mismo, y el hecho de que no permitiera réplicas adicionales, no constituyó una violación al derecho al debido proceso de ley de las partes. Es harto

---

[11] *Birriel Colón v. Econo y Otros*, supra, pág. 91.
[12] 32 LPRA Ap. V, R. 36.3 (e). Véase, además, *Pérez Vargas v. Office Depot*, supra, pág. 699.

conocido que no habremos de intervenir con el manejo del caso por el foro de primera instancia.[13]

En vista de lo anterior, el primer error señalado, no fue cometido.

En su *segundo* señalamiento de error, la parte apelante arguye que, la primera instancia judicial erró y abusó de su discreción al resolver que, la exención estatuida en la Sección 22(a) de la Ley Orgánica de la AEE, no se extendía al contratista de una obra de la AEE efectuada por este a favor de esta última. Ello, no obstante lo dispuesto en los casos *Coop. Ahorro Rincón v. Mun. Mayagüez,* 200 DPR 546 (2018) e *Interior Developers v. Mun. de San Juan,* 177 DRP 693 (2009).

Adelantamos que, no le asiste la razón. Veamos.

La sección 22 de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, dispone que, la AEE estará exenta del pago de contribuciones. Particularmente, en el inciso (a), expresa lo siguiente:

> (a) Por la presente se dispone y se declara que los fines para los que la Autoridad se crea y debe ejercer sus poderes son: la conservación de los recursos naturales, el mejoramiento del bienestar general, y el fomento del comercio y la prosperidad, y son todos ellos propósitos de fines públicos para beneficio del Estado Libre Asociado de Puerto Rico en todos sentidos y, por tanto, la Autoridad no será requerida para pagar ningunas contribuciones estatales o municipales, o impuestos de cualquier tipo sobre ninguna de las propiedades muebles e inmuebles adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios. Las personas que celebren contratos con la Autoridad no estarán sujetas al impuesto gubernamental sobre contratos, establecido en la Ley 1-2011, según enmendada, conocida como el "Código de Rentas Internas de Puerto Rico de 2011".

---

[13] *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 306-307 (2012).

Basado en lo previamente reseñado, de ninguna forma se puede entender que dicha exención se extiende a los contratistas privados que contraten con la AEE. Si esa era la intención del legislador, así lo hubiese plasmado en la referida ley, pero no fue así. Queda claro que, dicha exención no aplica a Continental.

En cuanto los casos citados por la parte apelante, *Coop. Ahorro Rincón v. Mun. Mayagüez*, supra e *Interior Developers v. Mun. de San Juan*, supra, estos son distinguibles del caso de epígrafe. En estos casos, el Tribunal Supremo resolvió que, las exenciones dispuestas en ciertos estatutos específicos eran extensibles a los contratistas, en esas circunstancias particulares. Veamos.

En el caso de *Interior Developers v. Mun. de San Juan*, supra, Interior Developers suscribió un contrato con la Superintendencia del Capitolio, con el propósito de realizar unas obras de construcción en el Capitolio. Nuestro Máximo Foro determinó que, conforme a la Ley de Municipios, la Rama Legislativa estaba excluida de la definición de Gobierno Central y que, por ello, el Municipio carecía de autoridad en ley para requerirle a Interior Developers el pago de los arbitrios de construcción por las obras que realizó en el Capitolio.

Por otro lado, en *Coop. Ahorro Rincón v. Mun. Mayagüez*, el Tribunal Supremo aplicó la legislación que regula a las Cooperativas de Ahorro y Crédito, específicamente, la Ley de Sociedades Cooperativas de Ahorro y Crédito de 2002, Ley Núm. 255-2002. Entendió que, según el texto de la Ley de Cooperativas, la intención legislativa exigía que, la exención contributiva otorgada por el Art. 6.08 aplicara a las obras de construcción que realizan las cooperativas, independientemente si las encargaron a un contratista o si las propias cooperativas las realizaron.

Destacamos que, en el caso de *Coop. Ahorro Rincón v. Mun. Mayagüez*, supra, la más Alta Curia señala que, las exenciones

contributivas deben ser interpretadas restrictivamente, y en caso de duda, a favor de su inexistencia. No obstante, no se debe perder de perspectiva que, su interpretación no puede ser tan restrictiva que tenga el efecto de frustrar la intención legislativa.

Según podemos observar, las circunstancias aplicables a los casos previamente citados son distinguibles del caso de epígrafe. Al analizar y aplicar la Ley Orgánica de la AEE queda claro que, la intención legislativa es brindar una exención del pago de arbitrios de construcción únicamente a la AEE, y no a los entes privados con los que contrate. Como bien resolvió el foro de primera instancia, si la intención legislativa hubiese sido que la exención de arbitrios de construcción se extendiera a las empresas privadas, así lo hubiera plasmado en la Ley Orgánica de la AEE. Al palio del derecho expuesto, colegimos que no incidió el foro primario, ni abusó de su discreción al no aplicar la exención contributiva en cuestión.

La parte apelante plantea en su *tercer* señalamiento de error que, el foro *a quo* erró y abusó de su discreción al no darle el justo y debido peso que merecen los casos resueltos por el Tribunal de Apelaciones. Sostuvo que, en ciertos casos resueltos por este foro revisor, se hizo extensiva la exención contributiva de una entidad exenta al contratista que realiza una obra perteneciente a dicha entidad, en virtud de la intención legislativa de la ley orgánica de la AEE y la jurisprudencia. Adelantamos que, no le asiste la razón. Veamos.

En su recurso, la parte apelante citó varios casos de este Tribunal de Apelaciones que, a su juicio, respaldan sus argumentos en cuanto a que, la exención atribuida a la AEE se extendía a los contratistas privados. Lo anterior, ya que, según explicó, había que tomar en consideración quién era el dueño de la obra. En los casos citados por la parte apelante, este foro resolvió que dicha exención se extendía al contratista privado.

Sin embargo, es menester señalar que los casos del Tribunal de Apelaciones ostentan un valor persuasivo y *no constituyen un precedente vinculante.* Por tanto, aunque pueden servir como guía tanto para el Tribunal de Primera Instancia, como para este propio foro apelativo, ninguno se encuentra en la obligación de ceñirse por lo previamente resuelto. Consecuentemente, el tercer error imputado no fue cometido.

Como *cuarto* señalamiento de error, la parte apelante aduce que, el Tribunal de Primera Instancia incidió y abusó de su discreción al concluir que varios casos resueltos por este Tribunal de Apelaciones, sobre la misma materia, eran aplicables al caso de marras, cuando los hechos en tales casos son diferentes y no son aplicables a la controversia de epígrafe. Añadió que, al así hacerlo, el foro apelado demostró prejuicio, parcialidad, arbitrariedad y error craso y manifiesto de derecho.

En cuanto a este señalamiento de error, al revisar la *Sentencia* emitida por el Tribunal de Primera Instancia, pudimos constatar que, el foro apelado utilizó los casos con identificación alfanumérica KLAN202500498 consolidado con el caso KLAN202500540. Aunque los hechos de los mencionados casos no son idénticos a los hechos del caso de epígrafe, como bien reseñó la parte apelada, en los aludidos casos se cuestiona la facultad de los municipios para imponer el pago de un arbitrio de construcción a un contratista privado contratado por la AEE para realizar una obra. Es decir, si la exención otorgada a la AEE, dispuesta por la Ley Núm. 81-1991, era extensiva a Cobra (contratista privado).

Al escoger los referidos casos, el Tribunal de Primera Instancia utilizó su discreción y mejor juicio para atender la controversia de epígrafe. Identificó circunstancias similares y el derecho que entendía que era aplicable a tal controversia. Según mencionáramos, los casos del Tribunal de Apelaciones pueden

servir de guía para el Tribunal de Primera Instancia al momento de resolver una controversia. El hecho de que, el foro apelado concluyera que, dichos casos plasmaban una controversia similar a la de autos y los utilizara de referencia, no constituye, de forma alguna, un abuso de discreción por su parte. Más bien, interpretó los hechos y el derecho expuesto en el ejercicio de su función adjudicativa.

Por ende, el planteamiento de la parte apelante es inmeritorio y el error señalado no fue cometido.

La parte apelante sostiene en su *quinto* señalamiento de error, que, el foro *a quo* cometió un grave error y abusó de su discreción al concluir que el Código Municipal prevalece sobre la sección 22(a) de la Ley Orgánica de la AEE, *supra*. Ello, en virtud de lo resuelto en *Caribbean Petroleum Co. v. Departamento de Hacienda*, 134 DPR 861 (1993) y al ser la Ley Núm. 83 de 1941 una ley especial que establece en la sección 27, que esta prevalecerá sobre las disposiciones de cualquier otra ley posterior con la que esté en pugna. Adelantamos que, no le asiste la razón. Veamos.

El foro de primera instancia señaló que, se desprendía de la Sección 22 de la Ley Núm. 83 de 1941, *supra*, que el legislador le concedió exención completa a la AEE sobre aranceles municipales, y que, había sido específico en cuanto a qué exenciones les daba a las empresas privadas que contrataban con la AEE, particularmente, solo a las que surgían del Código de Renta Internas de Puerto Rico.

A base de lo anterior, reseñó que, no existe duda de que, Continental es una empresa privada contratada por LUMA Energy, que, a su vez, es una empresa privada que administra el sistema de distribución eléctrica para la AEE, para reparar, rehabilitar y cambiar postes de alumbrado eléctrico, en el Municipio de Vega Alta.

Dispuesto lo anterior, el foro apelado se refirió a la Sección 22 de la Ley Orgánica de la AEE, *supra*, y determinó que, de la misma no surge que las empresas privadas tengan exención de arbitrios de construcción impuestos por los municipios. Aclaró que, si la intención del legislador hubiera sido otra, hubiese especificado que la exención contributiva de los contratistas privados se extendía a los arbitrios de construcción. No obstante, no lo hizo, sino que solamente especificó que era con referencia al Código de Rentas.

Según podemos ver, el Tribunal de Primera Instancia de ninguna forma concluyó que, el Código Municipal prevalecía sobre la Sección 22(a) de la Ley Orgánica de la AEE. Al contrario, de la *Sentencia* surge de forma clara que, aplicó dicha disposición de la Ley Núm. 83 de 1941, *supra,* para resolver la controversia.

De hecho, de la *Sentencia* se desprende lo siguiente: "[p]or tanto, este tribunal entiende que la Ley Orgánica de la AEE es clara y esta no concede exención al arbitrio de construcción que imponen los municipios a los contratistas privados que trabajan para la AEE". Es decir, el foro primario de forma expresa aplicó dicho estatuto.

Si bien es cierto que, el foro *a quo*, reseñó disposiciones del Código Municipal en su análisis, lo hizo en armonía con las disposiciones de la Ley Orgánica de la AEE.  Por tanto, no incidió el foro primario al así actuar.

En su *sexto y último* señalamiento de error, la parte apelante sostiene que, la primera instancia judicial incidió y abusó de su discreción al determinar que la enmienda del Código Municipal que introdujo la Ley Número 215 del 17 de septiembre de 2024, tiene aplicación retroactiva, cuando los precedentes judiciales establecidos por el Tribunal Supremo y del propio texto de la ley se dispone que aplica prospectivamente.  Adelantamos que, no le asiste la razón. Veamos.

En su *Sentencia,* el Tribunal de Primera Instancia expresa que, desde la Ley de Municipios Autónomos de Puerto Rico existe la obligación de los contratistas privados de pagar aranceles de construcción a los municipios sobre las obras que realicen en su territorio, salvo que exista una excepción. Reconoció que, el contrato entre LUMA y Continental fue suscrito *previo* a la vigencia de la enmienda al Art. 2.110 del Código Municipal. Sin embargo, señaló que, dicha enmienda no tiene efectos sobre el aludido contrato. Puesto que, la obligación de los contratistas sobre el pago de arbitrios de construcción ya existía previo a la enmienda.  El foro *a quo,* explicó que, la enmienda instituida por la Ley Núm. 215-2024, *supra,* no cambia las condiciones de pago de aranceles, sino que, meramente aclara la intención del Código, la cual siempre fue permitirle a los municipios cobrar el arbitrio de construcción a entidades privadas que realicen obras de construcción dentro de sus límites territoriales.

Como podemos observar, el Tribunal de Primera Instancia no aplicó la enmienda introducida por la Ley Núm. 215-2024, *supra,* a la controversia de autos. Si bien es cierto que, el foro primario discutió dicha enmienda, aclaró que, la misma era inconsecuente en el caso de epígrafe, en la medida en que, el pago de arbitrios de construcción ha sido requerido tanto por la derogada Ley de Municipios, como por el Código Municipal previo a la enmienda del 2024.

Por lo anterior, colegimos que es inmeritorio el planteamiento de la parte apelante y el error señalado no fue cometido.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones